LEE, C.J. DISSENTING:
 

 ¶ 52. Bacallao was incarcerated for seventy-eight days for no reason other than his attorney failed to inform him of his court dates. The majority finds that the decisions of the county court and circuit court-that Ross's representation of Bacallao was adequate and that she did not commit legal malpractice-were supported by substantial credible evidence and should be affirmed. I disagree and find that the decisions of the county court and circuit court wholly lacked support by substantial credible evidence, and should be reversed. Thus, I respectfully dissent.
 

 ¶ 53. The majority notes that the county court found that Ross presented evidence that she "did communicate or attempt to communicate" with Bacallao. At trial, Ross testified that she called Bacallao twice and left a voicemail on Friday afternoon prior to his Monday status conference. Yet Ross's trial testimony is contradicted by her own previous testimony at her deposition, where she testified that she did not leave a voicemail because there was no voicemail option available. Upon being shown phone records, which indicated that her office number called Bacallao's number and that a voicemail was left, Ross testified that she must have left a voicemail containing the date of the status conference, as she would have had no other reason to call Bacallao. She did not testify that she remembered leaving the voicemail or its contents, only that the phone records indicated she had left a voicemail and what the voicemail must have contained. Not only is her trial testimony contradictory to her deposition testimony, it is speculative at best. Ross did not
 
 remember
 
 , and there is nothing to indicate that the voicemail from Ross's office number contained the dates of Bacallao's status conference or that the voicemail was anything other than airtime. In fact, there is nothing to indicate that Ross herself, instead of her secretary, called Bacallao's number. Ross's testimony that she did not leave a voicemail, her later contradictory testimony evidencing an inability to remember, and Bacallao's testimony that he did not receive a voicemail containing the dates of his status conference demonstrate a lack of substantial credible evidence that Ross communicated with Bacallao to inform him of all matters of reasonable importance related to her
 representation-namely, when he was due in court.
 

 ¶ 54. Ross's failure to communicate with Bacallao about the status-conference date is only underscored by her further inadequate representation of him. At the status conference, Ross made no effort or attempt to mitigate Bacallao's absence by informing the judge that she had been unable to reach Bacallao, seeking a continuance or seeking to have the bench warrant withdrawn. After the bench warrant was issued for Bacallao's failure to appear, and he was consequently arrested, Ross visited the jail at least seven times during his seventy-eight days of incarceration according to sign-in logs at the sheriff's office. Yet she never once visited Bacallao on any of these seven occasions. In fact, Ross had never met or even spoken with Bacallao until she was deposed in his legal-malpractice suit against her. Only at this time did Ross learn that he did not speak English.
 

 ¶ 55. Ross makes much ado about Bacallao's duty as a client to communicate with her. Despite the evidence that Bacallao did not speak English, and that his family members' attempts to communicate with Ross were met only with her refusal, it is not Bacallao's communication that is at issue here. In this legal-malpractice suit, it is Ross's duty as an attorney to communicate with her client-not Bacallao's-that is the subject of scrutiny. "In all professional functions a lawyer should be competent, prompt[,] and diligent." Miss. R. Prof. Conduct, Preamble. The duties owed to clients by their lawyers are owed irrespective of the client's criminal-defendant status. Nevertheless, it bears noting that after Ross's lack of representation, Bacallao retained other representation under which he was released from jail on bond, and discovery lead to the dismissal of his indictment.
 

 ¶ 56. I also would find that the trial court abused its discretion by failing to admit exhibit 31-letters showing Ross's usual and customary practice of informing her criminal clients the dates that they were required to appear in court with a warning that failure to appear in court upon those dates would result in a warrant for their arrest. Because this case hinged on the standard of care and Ross's duty to inform Bacallao of his court dates, evidence showing Ross's usual, customary practice-the practice of a defense attorney and her failure to adhere to it-should not have been excluded. Therefore, with respect to this issue, I also dissent.
 

 ¶ 57. For a client to recover in a legal-malpractice claim, he must show by a preponderance of the evidence that but for his attorney's breach of the standard of care, he would not have sustained the injury.
 
 Donovan v. Burwell
 
 ,
 
 199 So.3d 725
 
 , 732 (¶ 23) (Miss. Ct. App. 2016). I cannot agree, as the majority apparently does, that failure to mail Bacallao his court dates, failure to even call him until the Friday afternoon before his Monday-morning court date, two phone calls seconds apart with an unsubstantiated voicemail, failure to ever visit him in jail, and failure to do anything else otherwise to represent him constitute adequate legal representation. Here, the record clearly shows that Bacallao established by a preponderance of the evidence that, but for Ross's failure to inform him of his court dates, he would not have spent seventy-eight days in jail for failure to appear. The county court's and circuit court's findings otherwise lacked support by substantial credible evidence. For these reasons, I would reverse the judgments of the county and circuit courts and, thus, dissent.